UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LI HUA QIAO,

Petitioner

07 Civ. 3727 (SHS)

-against-

UNITED STATES OF AMERICA,
         Respondent,

MEMORANDUM OF LAW IN SUPPORT OF
PETITION FOR WRIT OF ERROR CORAM NOBIS

PRELIMINARY STATEMENT

Petitioner Li Hua Qiao ("Petitioner" or "Mr. Qiao") submits this memorandum of law in support of his petition for writ of error coram nobis to vacate his conviction in accordance with United States v. Couto, 311 F.3d 179 (2d Cir. 2002). In that seminal decision the Court of Appeals held that misadvice by defense counsel on the immigration consequences of a guilty plea constitutes ineffective assistance as an objective matter, thus rendering the plea involuntary. Here the record makes clear that the defense counsel repeatedly told Mr. Qiao that he would not be deported so long as he did not receive a sentence of imprisonment. Unfortunately, however, that was simply not a correct statement of the law thus warranting the post-conviction relief sought here. Moreover, this case presents an instance where this misunderstanding giving rise to this misadvice actually appears on the record of proceedings in this case.

STATEMENT OF THE CASE

Li Hua Qiao was born on July 1958 in Nanning, China and became a lawful permanent resident of the United States on January 27, 1992. Verified Petition For Writ Of Error Coram Nobis ("Petition") ¶1. He is married to Shouyun Qiao, a United States citizen, and the couple has four United States citizen children, Elizabeth, born July 6, 1989, Matthew, born July 17, 1990, Robert, born June 29, 1992, and Ronald, born October 8, 1994.

In the only criminal matter in his entire life, Mr. Qiao entered a guilty plea before this Court on January 4, 1999, to a two count information charging a conspiracy under 18 U.S.C. §371 to violate 18 U.S.C. §1341 and a substantive violation of 18 U.S.C. §1341. Petition ¶2, Exhibit A and B. In brief, the offense conduct charged involved the payment of checks to Mr. Qiao for brokerage services that had not been performed. Petition ¶2, Exhibits A and B. On September 24, 1999, this Court sentenced Mr. Qiao to a term of probation for two years, with four months to be spent in home confinement, and ordered him to pay restitution in the amount of $27,366. Petition, Exhibits D and E. Mr. Qiao successfully completed probation without incident and paid the required restitution. Petition ¶3.

Prior to his agreement to plead guilty, Mr. Qiao was repeatedly advised by his criminal defense counsel that he would not be subject to deportation if did not receive a sentence of imprisonment. Petition ¶3. Unfortunately, however, this was not a correct statement applicable immigration law. Thus, well before the 1999 guilty plea, Congress had added offenses involving fraud or deceit for which the loss to the victim exceeded $10,000 to the list of "aggravated felonies" making even a lawful permanent resident

2

automatically deportable and barring such an alien from virtually all relief to prevent deportability. See Section 101(a)(43)(M)(i) of the Immigration & Nationality Act of 1952 as amended (the "Act"), 8 U.S.C. §1101(a)(43)(M)(i).[1] Moreover, the particular provision, a feature of immigration law since 1994, applies regardless of whether the alien has been sentenced to imprisonment and imposes all the adverse consequences of an aggravated felony conviction even if the sentencing court does not impose a sentence eof imprisonment. See Lopez v. Gonzales, 127 S.Ct. 625 (Dec. 4, 2006) (severe immigration consequences of aggravated felony conviction noted); Couto, 311 F.3d at 189 (noting automatic character of deportation for alien convicted of an aggravated felony).

In short, defense counsel misadvised Mr. Qiao on the immigration consequences of his guilty plea based upon a misunderstanding of applicable immigration law. Indeed, the sentencing transcript itself confirms this misunderstanding:

> [Defense Counsel]: But one of the things we are most concerned about and I ask the court to take into consideration under the Anti-terrorism and Effective Death Penalty in 1996 [sic][2], if Mr. Qiao is incarcerated, he will automatically be taken from the prison and deported to China.

---

[1] This provision was first added by the Immigration and Nationality Technical Corrections Act of 1994, Pub. L. No. 103-416, 108 Stat. 4305 ("INCTA"), which required a loss to the victim exceeding $200,000. The loss requirement was then reduced to exceeding $10,000 by Section 321 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, 110 Stat. 3009 enacted September 30, 1996 and made fully retroactive.

[2] While the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214, 1276-77 (Apr. 24, 1996) ("AEDPA") did make important changes to the immigration laws, IIRIRA, which was passed some five months later, actually made the key change applicable here in substantially lowering the loss requirement for application of the aggravated felony definition in 8 U.S.C. §1101(a)(43)(M)(i). If anything, AEDPA actually moved away from requiring a term of imprisonment for deportation as in Section 435 of this legislation, which removed the sentence of imprisonment requirement from the grounds of deportation for conviction of a crime involving moral turpitude.

> The Court: That is very relevant. So it's incarceration that triggers that; home confinement does not but incarceration does?
>
> [Defense Counsel] What happens, in fact, is that the INS is not looking to deport good citizens like Mr. Qiao so there is no attempt to deport individuals like him. However, if he is sentenced to prison, then the deportation becomes automatic, then the deportation becomes automatic and they. . .
>
> [The Court]: What I am asking is, is home confinement prison for purposes of that statute. I assume not.
>
> [Defense Counsel] The answer is not, your Honor[3].

Petition, Exhibit D at 12. Relying upon defense counsel's inaccurate statement of the law, the Court noted that the sentence imposed ". . . will avoid any automatic deportation by the INS, because I think that you can contribute to American society and I think your children and your family need you." Petition, Exhibit D at 16.

Mr. Qiao relied upon this incorrect advice and would not have entered a guilty plea in the absence of this advice. Petition ¶4. In addition, at no time prior to Mr. Qiao's entry of a guilty plea, did his criminal defense counsel investigate or seek to negotiate a guilty plea in which Mr. Qiao would have entered a plea to counts with amounts totaling less than $10,000, whatever might be the amounts determined for sentencing purposes and restitution. Petition ¶4. Compare Alaka v. Attorney General, 456 F.3d 88, 107 (3d Cir. 2006) (defendant who pleads guilty to single count of bank fraud under 18 U.S.C.

---

[3] While certain aggravated felony definitions do require a prison sentence, 8 U.S.C. §1101(a)(43)(M)(i) is not one of them. Compare 8 U.S.C. §§1101(a)(43) (F) (crime of violence with prison sentence of at least one year) and (G) (theft offense with prison sentence of at least one year). In addition, defense counsel's confident assertion about home confinement not constituting a custodial sentence has been rejected under the actual definition of sentence of imprisonment in 8 U.S.C. §1101(a)(48)(B), as also enacted by IIRIRA, which includes both incarceration and confinement ordered by the Court. See, e.g., Ilchuk v. Attorney General, 434 F.3d 618, 623 (3d Cir. 2006) (sentence of imprisonment includes home confinement with electronic monitoring).

§1344(1) with loss amount less than $10,000 does not satisfy aggravated felony loss requirement under 8 U.S.C. §1101(a)(43)(M)(i) regardless of restitution amount determined for sentencing).

The Department of Homeland Security has placed Mr. Qiao in removal proceedings based upon his conviction[4] and has successfully argued in Immigration Court that Mr. Qiao's conviction constitutes an aggravated felony under Section 101(a)(43)(M)(i) of the Act, 8 U.S.C. §1101(a)(43)(M)(i) as an offense involving fraud or deceit for which the loss to the victim exceeds $10,000, thus barring Mr. Qiao from virtually all forms of relief and eliminating his ability to maintain lawful permanent residence in the United States.[5] Deportation proceedings have been adjourned to January 2008 pending the outcome of this matter. Mr. Qiao's removal, of course, would have a devastating effect upon him, his wife and children. Petition ¶6.

ARGUMENT

CORAM NOBIS SHOULD BE GRANTED

---

[4] These proceedings followed Mr. Qiao's brief trip abroad and return to the United States, which, given the changes made by IIRIRA in 1996 subjected him to removal proceedings. Matter of Collado, Int. Dec. 3333 (BIA 1997) (en banc) (returning resident alien subject to removal proceedings following 1996 changes); 1 Gordon, Mailman & Yale—Loehr, Immigration Law and Procedure §10.05 (2007)

[5] Thus an aggravated felony conviction make Mr. Qiao statutorily ineligible to apply for cancellation of removal under Section 240A(a)(3) of the Immigration & Nationality Act of 1952, as amended (the "Act"), 8 U.S.C. §1229b(a)(3), allowing the Immigration Court to weigh the good and bad in his life. Similarly, an aggravated felony conviction permanently bars him applying for naturalization. See Section 101(f)(8) of the Act, 8 U.S.C. §1101(f)(8).

Postconviction relief by coram nobis remains available to a petitioner such as Mr. Qiao who has served his criminal sentence and faces collateral consequences from his conviction. See, e.g., United States v. Morgan, 346 U.S. 502, 505-506n. 4 (1954); Foont v. United States, 93 F.3d 76, 79 (2d Cir. 1996); United States v. Castro, 26 F.3d 557 (5th Cir. 1994); United States v. Golden, 854 F.2d 31, 32 (3d Cir. 1988): United States v. Ko, 1999 U.S. Dist. LEXIS 19369 (S.D.N.Y. 1999) (Haight, J.); Shushansky v. United States, 1994 U.S. Dist. LEXIS 18589 (E.D.N.Y. 1994).

With respect to collateral consequences, Mr. Qiao now faces the "a sanction which in severity surpasses all but the most Draconian criminal penalties," as the Court of Appeals held in Lok v. INS, 548 F.2d 37, 39 (2d Cir. 1977). See also INS v. Cardoza-Fonseca, 480 U.S. 421, 449 (1987) ("[d]eportation is always a harsh measure"); Costello v. INS, 376 U.S. 120, 128 (1964) (deportation is a "drastic measure" where the "stakes are considerable for the individual"); Ng Fung Ho v. White, 259 U.S. 276, 284 (1922) (deportation may "result . . . in loss of both property and life; or of all that makes life worth living"). Indeed, no less an authority than founder James Madison has expressly acknowledged the harsh punishment represented by deportation noting that ". . . if a banishment of this sort be not a punishment and among the severest of punishments, it will be difficult to imagine a doom to which the name can be applied." James Madison, "Report on the Alien and Sedition Acts," Writings at 623 (Library of America 1999, Jack N. Rakove, ed.).

Accordingly, deportation represents a recognized collateral consequence supporting postconviction relief. See, e.g., United States v. Fiswick, 329 U.S. 211, 222n.8 (1946) ("Although deportation is not criminal punishment, it may visit great hardship on an alien. . ."); United States v. Romero-Vilca, 850 F.2d 177 (3d Cir. 1988) (possible deportation is

collateral consequence supporting postconviction relief); <u>Ko</u>.  Furthermore, the severity of this collateral consequence is evident from the deep roots that Mr. Qiao his family have sunk in this country, as well as this Court's recognition at sentencing that Mr. Qiao's family needs him and that he could contribute further to American society.  <u>See, e.g. Bastidas v. INS</u>, 609 F.2d 101, 105 (3d Cir. 1979) ( "the family and relationships between members. . . are a fundamental part of the values which underlie our society").  Accordingly, this cases presents a classic instance where coram nobis should be granted under the sliding scale adopted by the Third Circuit in <u>United States v. Pivorotto</u>, 986 F.2d 669, 669, 682 (3d Cir.), <u>cert. denied</u>, 510 U.S. 1004 (1993) holding that such post conviction relief should be more readily available where the challenged conviction carries severe collateral consequences.

     Given the severe collateral consequence now involved in this case, coram nobis should be granted based the objectively ineffective assistance of counsel in misstating the immigration consequences of a guilty, a misstatement that rendered Mr. Qiao's guilty plea involuntary.  Under these circumstances, <u>Couto</u> should be controlling.  There defense counsel had advised the alien defendant in pleading guilty that she would be able to apply for a judicial recommendation against deportation ("JRAD") from the District Court even though such a binding recommendation had been abolished well before the guilty plea.  Similarly here, defense counsel misadvised Mr. Qiao that he would not be deported if he did not receive a sentence of imprisonment, a conclusion that was flatly wrong given legal developments some three years prior to the guilty plea.  Furthermore, post-conviction relief, including coram nobis, has certainly been granted based upon misadvice that was on a par with that given here.  <u>See, e.g., United States v. Kwan</u>, 407

F.3d 1005, 1011-1015 (9th Cir. 2005) (coram nobis granted based upon misadvice on immigration consequences of guilty plea); Zhang v. United States, 401 F.Supp.2d 233 (E.D. N.Y. 2005) (relief under 28 U.S.C. §2255 granted where alien defendant advised that he *might* be subject to deportation but where, as here, his offense was an aggravated felony making deportation automatic)[6]; United States v. Pascual, 2007 U.S. Dist. LEXIS 757 (N.D. Ill. Jan. 5, 2007) (coram nobis granted vacating 1995 tax conviction where defense counsel advised alien that there would be no adverse immigration consequences from guilty plea and alien placed in removal proceedings in 2004 upon return to United States)[7]; United States v. Khalaf, 116 F.Supp.2d 210 (D. Mass. 1999) (writ of coram nobis granted vacating 1985 drug conviction where defense counsel had mistakenly advised that JRAD would be available to protect him from deportation).

Under these circumstances, coram nobis should be granted for, as Couto holds, the misadvice was objectively unreasonable, thus rendering Mr. Qiao's guilty plea involuntary as a matter of law. Indeed, as Judge Calabresi made clear speaking for a unanimous Court in Couto, 311 F.3d at 187 "We believe that an affirmative misrepresentation by counsel as to the deportation consequences of a guilty plea is today objectively unreasonable." Furthermore, the Mr. Qiao was obviously prejudiced by this ineffective assistance for he would not have entered a guilty plea but counsel's misadvice

---

[6] Significantly, Zhang, 401 F.Supp. 2d at 241 holds that deportation following conviction of an aggravated felony is no less automatic because the deportable alien such as the defendant there or Mr. Qiao here may apply under the Convention Against Torture and 8 C.F.R. §208.17 for deferral of removal to a country that would torture him. In other words, just in Zhang, the misadvice here has served to render Mr. Qiao automatically deportable.

[7] In Zhang, the alien had entered a guilty plea to a fraud offense that fell within Section 101(a)(43)(M)(i) of the Act, and in Pascual the alien had entered guilty plea to an offense

on this issue. Accordingly, following <u>Couto</u>, Mr. Qiao has met the test laid down by <u>Strickland v. Washington</u>, 466 U.S. 668 (1984) for establishing ineffective assistance of counsel warranting post-conviction relief. <u>See also Kwan</u>, 407 F.3d at 1015 (following <u>Couto</u>, coram nobis granted based upon defense counsel's misadvice on immigration consequences of guilty plea).

   Additional support for coram nobis here can also be found in defense counsel's apparent failure to seek a plea to counts with amounts aggregating less than $10,000 thus taking any conviction outside the aggravated felony category in Section 101(a)(43)(M)(i) of the Act. <u>See Alaka, supra</u>; <u>Knutsen v. Gonzales</u>, 429 F.3d 733 (7th Cir. 2005) (not an aggravated felony under Section 101(a)(43)(M)(i) where alien defendant pleaded guilty to count with $7350 loss but acknowledged for sentencing purposes a total loss of some $20,000) ; <u>Chang v. INS</u>, 307 F.3d 1185 (9th Cir. 2002) (held not an aggravated felony under Section 101(a)(43)(M)(i) where alien defendant had pleaded guilty to a single count with loss less than $10,000 but agreed for sentencing purposes to a restitution range between $20,000 and $40,000). In short, defense counsel did not inquire about a plea option that would have avoided automatic deportation for Mr. Qiao without in anyway limiting the Court's discretion to order restitution under the sentencing guidelines. This would seem to constitute ineffective assistance at a critical stage of proceedings just as the similar failure to advise a client of his ability to request a judicial recommendation of deportation in <u>Janvier v. United States</u>, 793 F.2d 449 (2d Cir. 1999) was held to constitute ineffective assistance. <u>See also Castro</u>, <u>supra</u> (coram nobis available for claim that defense counsel failed to advise defendant of availability of JRAD) <u>People v.</u>

---

under Section 101(a)(43)(M)(ii) (offense under 26 U.S.C. §7201 for which the loss of

Bautista, 115 Cal. App. 4th 229, 8 Cal. Rptr. 3d 862, 871 (Court of Appeal—Sixth District 2004) (failure to consider alternatives that would not have imposed an aggravated felony conviction upon alien defendant constituted ineffective assistance).

### CONCLUSION

For all the above reasons, coram nobis should be granted.

Dated:       June 15, 2007
             Newark, New Jersey


                                    /s/Thomas E. Moseley
                                    THOMAS E. MOSELEY
                                    One Gateway Center--Suite 2600
                                    Newark, New Jersey 07102
                                    Tel.    (973) 622-8176
                                    Attorneys for Petitioner


### CONCLUSION

For all the above reasons, an order to show cause should be issued, the matter and coram nobis granted.

Dated:       March 19, 2007
             Newark, New Jersey

                                    Respectfully yours,


                                    Thomas E. Moseley

cc:     Christopher Christie, Esq.
        United States Attorney

---

revenue exceeded $10,000).