UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LI HUA QIAO,

Petitioner

07 Civ. 3727 (SHS)

-against-

UNITED STATES OF AMERICA,
        Respondent,

## REPLY DECLARATION OF THOMAS E. MOSELEY

1.      I am a member of the bar of this Court and serve as counsel for the Petitioner, Li Hua Qiao. I make this reply declaration in support of the present petition and to place on the record relevant documents with respect to petitioner's removal proceedings.

2.      Attached hereto as Exhibit A is a true and correct copy of the submission by the Department of Homeland Security on the petitioner's ineligibility for relief from removal.

3.      Attached hereto as Exhibit B is a true and correct copy of the opposing submission by petitioner's prior attorney in immigration proceedings.

4.      Attached hereto are representative letters in support of Petitioner's request for the exercise of prosecutorial discretion with the Department of Homeland Security.

I declare under penalty of perjury in accordance with 28 U.S.C. § 1746 that the foregoing is true and correct.

Executed on October 29, 2007

                    /s/Thomas E. Moseley
                    THOMAS E. MOSELEY

EXHIBIT A

*Office of the Chief Counsel*

**U.S. Department of Homeland Security**
26 Federal Plaza, Room 1130
New York, NY 10278
(212) 264-5916



**U.S. Immigration and
Customs Enforcement**

March 9, 2005

Honorable Douglas Schoppert
United States Department of Justice
Executive Office for Immigration Review
26 Federal Plaza
New York, New York 10278

**Re: QIAO, Lihua (A71 989 992)**

Dear Judge Schoppert:

I am writing this letter in response to your request that the Department of Homeland Security ("DHS") state its position regarding the above mentioned respondent's eligibility for Cancellation of Removal pursuant to section 240A(a) of the Immigration and Nationality Act ("INA") and a waiver pursuant to section 212(h) of the INA. Since the respondent, a returning legal permanent resident, was convicted of an aggravated felony, he is not eligible for either Cancellation of Removal or a waiver pursuant to section 212(h) of the INA. In addition, the respondent's receipt of a Certificate of Relief from Disabilities does not vacate the respondent's convictions for purposes of immigration law.

The respondent, a native and citizen of the People's Republic of China ("PRC"), adjusted his status to legal permanent resident on or about January 27, 1992. On August 31, 1998, the respondent pled guilty in United States District Court, Southern District of New York, to the offenses of Conspiracy to Commit Mail Fraud, pursuant to 18 United States Code ("U.S.C.") section 371, and Mail Fraud, pursuant to 18 U.S.C. section 1341. See Criminal Docket; Judgment in a Criminal Case at 1. On November 23, 2004, the DHS filed and served the Notice to Appear ("NTA") and placed the respondent in removal proceedings. The NTA charges the respondent as removable under section 212(a)(2)(A)(i)(I), as an alien convicted of a crime involving moral turpitude; the NTA also charges the respondent as an arriving alien. At a master calendar hearing on February 18, 2005, the respondent indicated that he wished to seek the relief of Cancellation of Removal, pursuant to section 240A(a) of the INA, or a waiver pursuant to section 212(h) of the INA.

The respondent is not eligible for Cancellation of Removal or a 212(h) waiver because he was convicted of an aggravated felony. As punishment for the respondent's offenses of Mail Fraud and Conspiracy to Commit Mail Fraud, the respondent was placed on probation for two years and required to pay restitution of $27,366.00 to the Port Authority of New York and New Jersey. See J. in a Criminal Case at 6. The respondent's crime, therefore, qualifies as an aggravated felony because it involves fraud or deceit in which the loss to the victim or victims exceeds $10,000. See INA § 101(a)(43)(M)(i).

Having been convicted of an aggravated felony, the respondent, a returning legal permanent resident, is not eligible for Cancellation of Removal. See INA § 240A(a)(3). In addition, the respondent is not eligible for a waiver pursuant to section 212(h) of the INA because he is a returning legal permanent resident and "no waiver shall be granted under this subsection [if] the alien has been convicted of an aggravated felony." See INA § 212(h).[1]

---

[1] To be rendered ineligible for the relief of Cancellation of Removal or a 212(h) waiver, the INA requires that the respondent be convicted of an aggravated felony but does not require that the respondent be charged as such.

The respondent has been convicted of two criminal offenses for purposes of federal immigration law notwithstanding the receipt of a Certificate of Relief from Civil Disabilities. A Certificate of Relief under New York law does *not* immunize an alien from the consequences of his conviction in immigration proceedings. See Mugalli v. Ashcroft, 258 F.3d 52, 62 (2nd Cir. 2001) ("…[B]ased on … our understanding of the significance of the Certificate of Relief under New York Law, the Certificate of Relief does not immunize him [Mugalli] from the deportation consequences of that conviction."); Morrisette v. Dilworth, 59 N.Y.2d 449, 452 n. 2 (1983) (noting under New York law a Certificate of Relief does not have the effect of eradicating or expunging the underlying conviction, only mitigating the consequences of the conviction); Matter of Pickering, 23 I&N Dec. 621, 624 (BIA 2003) (finding that convictions vacated for rehabilitation or immigration purposes do fall within the meaning of INA section 101(a)(48)(A)). The respondent, therefore, remains convicted of an aggravated felony for purposes of immigration law.

Any applications for Cancellation of Removal pursuant to INA section 240(A) or a waiver pursuant to section 212(h) should be denied, as the respondent is not eligible for such relief.

Respectfully submitted,

Lauren T. Farber
DHS/ICE

## CERTIFICATE OF SERVICE

I, Lauren T. Farber, hereby certify that on ___3-9-05___, I caused to be served by first-class mail a true and correct copy of the foregoing letter upon the respondent by placing such copy in my office's outgoing mail system, postage prepaid, in an envelope duly addressed as follows: Thomas Massucci, 401 Broadway, Ste. 404, New York, NY 10013.

Lauren T. Farber
Assistant Chief Counsel
DHS/ICE

**EXHIBIT B**

### EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
### U.S. IMMIGRATION COURT
### NEW YORK, NEW YORK

-----------------------------------------------------------X

In the Matter of the Removal Proceedings of          **File No.: A 71 989 992**

LI HUA QIAO,

                      Respondent.          Douglas Schoppert
                                                Immigration Judge

-----------------------------------------------------------X

## RESPONDENT'S BRIEF ON ELIGIBILITY FOR RELIEF

    **NOW**, comes the Respondent by and through his designated legal representative, DENIS P. McALLISTER, and submits the following as his brief on the issue of his eligibility for relief from removal:

    The instant brief is submitted in reply to the U.S. Immigration & Customs Enforcement's letter brief (hereinafter referred to as "ICE Brief") to Your Honor dated March 9, 2005, wherein the Government concludes that the instant Respondent is removable and furthermore ineligible for Cancellation of Removal and for a section 212(h) waiver of removability.

    We respectfully submit that the Government's position is erroneous. However, we do concede the fact that the Respondent was issued a Certificate of Relief from Civil Disabilities, under New York State's Executive Law, does not impact whether or not the

1

U.S.C. Section 371; and one (1) count of mail fraud in violation of 18 U.S.C. Section 1341 and 1342.

On January 4, 1999, the Respondent entered into a cooperation agreement with the United States Attorney's Office and pled guilty before the Honorable Sidney Stein to both counts contained within the felony information (hereinafter referred to as "Information").

The counts contained within the Information are the (1) substantive offense of mail fraud and (2) conspiracy to commit mail fraud.

It should be noted that the crime of Mail Fraud is **not** identified in the Immigration & Nationality Act (hereinafter referred to as "the Act") as an Aggravated Felony. The Act does identify a generic "fraud" crime wherein if the loss exceeds $10,000.00, then and in that event the individual respondent would be deemed to have been convicted of an aggravated felony. See Section 101(a)(43)(M)(I) of the Act.

The germane documents for Your Honor's consideration are the Information, the plea agreement entered into between the Government and the respondent, and the judgment in a criminal case. INA Section 240(c)(3)(B).

The Information bears a "filed" date of December 23, 1998, and is attached hereto as "Exhibit A". The Information contains the charges and other narrative information about the Government's understanding of the purpose and operation of the criminal acts of the participants.

Under the Heading of Count One in the Information is a subheading containing the

3

actual charge and is identified as "The Conspiracy". The charge states:

> "From in or about **May 1994**, through in or about **August 1998**, in the Southern District of New York and elsewhere, LI HUA QIAO, the defendant, a co-conspirator not named as a defendant herein, and others known and unknown, unlawfully, willfully, and knowingly did combine, conspire, confederate, and agree together and with each other to commit an offense against the United States, to wit, to violate Title 18, United States Code, Section 1341. (emphasis added).

The balance of the language contained in the Information relative to Count One is superfluous and is simply the Government's narrative of what they believe to be the object of the conspiracy and what the Government believes to be the overt act(s) engaged in by the defendant or defendants identified in the felony information, and is in no way indicative of what the defendant stands convicted of.

In fact had this Respondent's case gone to trial the jury would have been instructed on the law of conspiracy and the substantive offense and the jury would have been read the language identified immediately above and the balance of the narrative language contained within paragraphs numbered 2, 3 and 4 of the Information would have **not** been provided to the jury, because the language incorporating the charge is wholly contained within paragraph numbered 1.

It is interesting to note that the narrative contained within paragraph 3(a) of Count One states that "Li Hua Qiao...deposited a check for approximately $17,918 made payable to Jiahua Enterprises, Inc., into a bank account located at Citibank, New York, New York".

This narrative fails to identify what the significance of the deposit is. Does the

4

deposit reflect 100% loss to the victim, does it represent something else? That is why the language outside of paragraph number 1 of the Information is completely superfluous and should not be relied upon by Your Honor when conducting Your analysis of this issue.

Under Count Two of the Information the language containing the charge is contained entirely within paragraph numbered 5, wherein it states:

> "From in or about **May 1994**, through in or about **August 1998**, in the Southern District of New York and elsewhere, LI HUA QIAO, the defendant, a co-conspirator not named as a defendant herein, and others known and unknown, unlawfully, willfully, and knowingly, would and did devise a scheme and artifice to defraud, and to obtain money and property by means of false and fraudulent pretenses, representations and promises, to wit, LI HUA QIAO, the defendant, a co-conspirator not named as a defendant herein, submitted and caused to be submitted false and fraudulent claims for real estate brokerage commissions to the Port Authority in connection with leasing of office space at the World Trade Center, and for the purpose of executing such scheme and artifice and attempting to do so, would and did cause to be delivered by mail according to the direction thereon, a matter and thing, to wit, checks issued by the Port Authority in payment of said false and fraudulent claims for real estate brokerage commissions. (Title 18, United States Code, Sections 1341 and 2). (emphasis added).

No where within the relevant portions of the Information does it indicate that any victim loss exceeded $10,000.

The next germane document that Your Honor is anticipated to review is the Respondent's plea agreement with the Government. Attached hereto as "Exhibit B" is a copy of the plea agreement, which bears a date of December 24, 1998. The Respondent

acknowledged that plea agreement in court on January 4, 1999.

The contents of the plea agreement will not be repeated herein. However, after reviewing the plea agreement it becomes clear that the amount of loss to any victim or victims is not contained therein.

The last germane document that Your Honor is anticipated to review is the Respondent's Judgment (of Conviction) in a Criminal Case (hereinafter referred to as "Judgment"). Attached hereto as "Exhibit C" is a copy of the Judgment, which bears a date of September 24, 1999.

The Judgment confirms what the other two relevant documents state; that this Respondent stands convicted of one count of conspiracy to commit mail fraud and one count of mail fraud.

Additionally, the Judgment contains a section identified as "Special Conditions of Supervision". In that section the Court ordered that as a special condition of the Respondent's supervision he "shall pay restitution in the amount of $27,366.00 to the Port Authority of New York and New Jersey, payable in 12 monthly payments commencing on October 24, 1999". See Judgment at page number 3.

Page 4 of the Judgment contains the Restitution condition of the Respondent's sentence. In that section the Court ordered that the "defendant shall make restitution to the following payees in the amounts listed below". The Restitution section identifies the Port Authority of New York and New Jersey and orders restitution in the amount of $27,366.00.

6

## II.    *Legal Analysis.*

For purposes of determining whether the Respondent has been convicted of an aggravated felony Your Honor is authorized, under relevant caselaw, to review the record of conviction. The "record of conviction" is a term of art and has been identified as the charging document (i.e. indictment, information), the plea agreement, and the judgment of conviction. INA Section 240 (c)(3)(B).

The Board of Immigration Appeals has limited the immigration judges' review of the relevant documents to just the record of conviction. *In re: Pichardo-Sufren*, 21 I&N. Dec. 330, 1996 WL 230227 (BIA 1996). This methodology has been identified as the categorical approach.

"This categorical approach, focusing only on the elements of the offense of conviction rather than the factual circumstances of the crimes, is also...consistent with the language of the INA, which renders deportable any alien who has been 'convicted' of an aggravated felony" *In re: Pichardo-Sufren* at 230228.

The language in the statute limits this Court's focus on the alien's conviction and not on his/her underlying conduct.

If the label given to any particular offense is not determinative of whether or not that crime constitutes an aggravated felony then the Board of Immigration Appeals must offer an alternative yardstick by which determine whether a conviction renders an alien

7

removable as an aggravated felon. *Ming Lam Sui*, 250 F.3d 105, 114 (2d Cir. 2001).

The Second Circuit has adopted the categorical approach. See *Dalton v. Ashcroft*, 257 F.3d 200, 203 (2d Cir.2001).

Recently the Second Circuit explained its use of the categorical approach. In the matter of *Dickson v. Ashcroft*, 346 F.3d 44 (2d Cir. 2003) the court stated that the categorical approach focuses on the intrinsic nature of the offense rather than on the factual circumstances underlying the particular misconduct. *Dickson* at 48. See also, *Sui v. INS*, 250 F.3d 105, 116-18 (2d Cir. 2001).

One of those documents identified by the Second Circuit as comprising the record of conviction is the judgment of conviction. *Dickson* at 50. We will discuss the contents of the Judgment below.

Recently the Board of Immigration Appeals has concluded that "we must take the plea agreement as we find it and accept the loss quantum stipulated therein **to the exclusion of other evidence**". *In re: Amalia Lagpacan Malacas*, 2004 WL 2374341 (BIA 2004) (quoting *Chang v. INS*, 307 F.3d 1185, 1190 {9th Cir. 2002})(emphasis added).

In the instant case there is no loss quantum calculation identified in this Respondent's plea agreement.

The usual practice of courts that utilize the categorical approach entails the court looking beyond the language of the statute to examine the charging document and the judgment of conviction when the relevant statute includes conduct that would qualify as an

aggravated felony and conduct that would not qualify as an aggravated felony. See *Ye v. INS*, 214 F.3d 1128, 1131 (9th Cir. 2000).

It is apparent that a conviction for mail fraud may constitute an aggravated felony and their may be times when a conviction for mail fraud does not constitute an aggravated felony. The burden always remains with the Government to prove deportability/removability by clear and convincing evidence. *Duvall v. Elwood*, 336 F.3d 228 (3rd Cir. 2003).

We respectfully submit that, for reasons to be identified below, the Government has failed to show by clear and convincing evidence that this Respondent is a removable as an aggravated felon.

Restitution in federal criminal cases for the type of offense for which this Respondent stands convicted is found at 18 U.S.C. Section 3663. It should be noted that often times criminal defendants may obligate themselves to incur a higher restitution amount over and above that amount of loss for which they are in fact responsible in order to obtain a more favorable disposition of their criminal case.

Illustrative of this point is a case from the Ninth Circuit. In *Chang v. INS*, 307 F.3d 1185, (9th Cir. 2002), the alien defendant pled guilty to bank fraud. Afterwards the respondent was placed in removal proceedings. The plea agreement entered into by Chang contained a recital that "the defendant and the United States agree that the offense in Count Seven to which the defendant is pleading guilty involves a loss to the victim of $605.30"

*Chang* at 1187.

Interestingly, Chang, agreed to make restitution **in excess** of the specific loss of $605.30 in the plea agreement. In Chang's plea agreement there was a recital that "the restitution amount should fall within the $20,000.00 to $40,000.00 range" id at 1188.

At the time of sentence pronouncement Chang was ordered to pay restitution in the amount of **$32,628.67**. The judgment of conviction contained a restitution provision which ordered the same amount. The BIA also looked at the PreSentence Report as part of the "record of conviction".

The Ninth Circuit concluded that reliance by the INS upon the PreSentence Report was improper and further that Chang was not an aggravated felon and they reversed the ruling by the BIA. The Court held, "{t}he INS must take the plea agreement as they find it" id at 1190. The Court explained its rationale further on in the decision:

> "Allowing an IJ or the INS to rely on statements or facts in a PSR that relate to dismissed counts to trump the loss amount agreed to by both the alien defendant and the government in a plea agreement would surely lead to sandbagging of many non-citizen criminal defendants" id at 1192.

In the instant case there are gaps in the "record of conviction" that make it impossible for the Government to meet its burden of proof by clear and convincing evidence. For example the plea agreement is devoid of a loss quantum stipulation. Additionally, from a review of the Information it is not clear the loss amount attributed to the Respondent.

10

The Notice to Appear dated November 23, 2004, in the instant matter only charges the Respondent as being removable under Section 212(a)(2)(A)(i)(I) of the Act. To wit, having admitted to committing acts which constitute the elements of a crime involving moral turpitude.......

Assuming the Government files an amended or supplemental Notice to Appear containing an additional basis for removal of this Respondent based upon his conviction for an aggravated felony the Government will still fail to meet its burden of proof that the instant Respondent has been <u>convicted</u> of an aggravated felony, rendering him ineligible for relief from removal under the Anti-terrorism and Effective Death Penalty Act of 1996 (hereinafter referred to as "AEDPA") and the Illegal Immigration Reform and Immigration Responsibility Act of 1996 (hereinafter referred to as "IIRIRA").

We submit that this Respondent qualifies for Cancellation of Removal Relief as well as a Section 212(h) waiver of removability and that he has not suffered an aggravated felony conviction under the INA.

Dated: April 28, 2005.

Respectfully submitted,

Denis P. McAllister
Attorney for Respondent
350 Old Country Road, Suite 101
Garden City, New York 11530

To:    Lauren Farber, Esq.

11

**EXHIBIT  C**

**EDOLPHUS "ED" TOWNS**
MEMBER OF CONGRESS
10TH DISTRICT, NEW YORK

**ENERGY AND COMMERCE**
HEALTH

TELECOMMUNICATIONS AND
THE INTERNET

COMMERCE, TRADE, AND
CONSUMER PROTECTION

**GOVERNMENT REFORM**
GOVERNMENT MANAGEMENT,
FINANCE, AND ACCOUNTABILITY
RANKING MEMBER

WASHINGTON OFFICE:
SUITE 2232
RAYBURN HOUSE OFFICE BUILDING
WASHINGTON, DC 20515
(202) 225-5936

BROOKLYN OFFICES:
26 COURT STREET, SUITE 1510
BROOKLYN, NY 11242
(718) 855-8018

1110 PENNSYLVANIA AVENUE
STORE 5
BROOKLYN, NY 11207
(718) 272-1175

1670 FULTON STREET
BROOKLYN, NY 11213
(718) 774-5682

2294 NOSTRAND AVENUE
BROOKLYN, NY 11203
(718) 434-7931

## Congress of the United States
## House of Representatives
### Washington, DC 20515–3210

September 26, 2006

Hon. Douglas Schoppert
Exc. Office for Immigration Review
26 Federal Plaza
New York, NY 10278

Re: **Qiao, Li Hua**
**A: 719-89-922**

Dear Mr. Schoppert:

I write today in strong support of Mr. Li Hua Qiao who has had removal proceedings initiated against him for a 1998 conviction for mail fraud on the grounds that the crime involved moral turpitude. During a close and concerned review of the brief prepared by Mr. Vlad Kuzmin  (Kuzmin & Associates, P.C.), I am more convinced that Mr. Qiao deserves an opportunity to remain in the US with his family.  The fact that his wife and children are all US Citizens should afford him consideration to stay on humanitarian grounds.

Mr. Qiao has had many accomplishments since his unfortunate circumstances that not only confirm that he is man of divine moral character. He also has a deep sense of community which is exemplified by his membership in a multitude of community based organization that service not only the community, but also those that are in serious need of services in order to sustain a stable family environment.

Mr. Qiao removal would be a devastating blow to the family structure he has fundamentally built and cause extreme hardship to his close and loving family. America was built on the strength that the family what builds a great society. I am confident, therefore that he is more than an asset than a deficit to this great country of our and the multitude of cultures it supports.

Your assistance with this matter will be greatly appreciated. With warm wishes, I remain

Sincerely yours,

Edolphus "Ed" Towns
Member of Congress



# ASIAN AMERICAN COUNCIL

MICHAEL S. LIMB
OFFICE OF THE
EXECUTIVE CHAIRMAN

May 30, 2006

Theresa Pauling,
Chief Counsel
Department of Homeland Security
26 Federal Plaza, 11ᵗʰ Floor
New York, NY 11278

Re: Qiao, Li Hua, A#71-989-992

Dear Ms. Pauling:

I write this letter on behalf of Mr. Qiao, Li Hua, in support of his
applications for immigration relief.

I have known Mr. Qiao for the entire time he has been a member of the
Asian American Council. Mr. Qiao has a wonderful and close-knit family
- he and his wife have four children, all United States citizens. Mr. Qiao is
well-known in the community as a hardworking and honest individual who
has been making substantial and extraordinary contributions to the public.
On January 1, 2000, Mr. Qiao was elected to a two-year term as a
Chairperson of the Dix Hills Chinese Cultural Association on Long Island,
which provides after-school programs and tutorial programs in the Chinese
languages and culture to over 250 students and has a membership of over
400 families. On September 6, 2002, Mr. Qiao was re-elected for a second
two-year term.

In November 2002, due to his demonstrated involvement, commitment and
leadership ability in the Chinese-American community in New York, Mr.



# ASIAN AMERICAN COUNCIL

Qiao was appointed Vice Chairman by the board of directors of the United Chinese Association of New York, an umbrella organization of over 140 fraternal Chinese-American organizations in Greater New York.

Additionally, Mr. Qiao serves as Chairman of the Guangxi United Fraternal Association of America, Inc., which has over 300 members who are Chinese Americans from the Guangxi Province of China, where Mr. Qiao originates. Mr. Qiao also serves as President of the Guangxi Chamber of Commerce of New York, a business association of over 100 members who came from Guangxi Province of China.

His most significant achievement in the Chinese-American community was the selection of Mr. Qiao from over 800 Chinese American community leaders in the United States, to be one of the 5 representatives from New York to be an overseas advisor to China National Overseas Chinese Federation, which functions to promote better Sino-American relations and Develop stronger ties between the overseas Chinese with local communities. In February 2003, Mr. Qiao was one of 68 representatives of the 30 million overseas Chinese outside of China to be invited to China to attend a meeting at the Great Hall of the People in Beijing, China.

In March 2005, Mr. Qiao became the Chairman of Council of Chinese-American Associations of New York ("CCAA"), consisting of 27 New York Chinese organizations representing Chinese Americans from mainland China, Taiwan, Hong Kong and other areas.   Under Mr. Qiao's leadership, CCAA made substantial donations to the American Red Cross in connection with the South Asia Tsunami and Hurricane Katrina of New Orleans relief efforts.   Further, Mr. Qiao has been instrumental in enlisting various Chinese



# ASIAN AMERICAN COUNCIL

community organizations to assist the government in its anti-terrorist efforts.

Furthermore, Mr. Qiao's most recent achievement is that he has been selected and approved on May 18, 2006 to be an award winner of the Asian American Outstanding 50 Award, which is a highest honor to successful business executives or entrepreneurs with outstanding achievements. Senator Hillary Clinton will grant the award to Mr. Qiao and other winners in Hilton Hotel, Manhattan in the middle of June, 2006.

Without any reservations, I affirm that Mr. Qiao is a person of great talent and good moral character whose federal conviction was an aberration in his law-abiding career and community service. Removal of this highly regarded and extraordinary individual from the USA will not benefit our society.    I respectfully ask for termination of Mr. Qiao's removal proceedings to maintain his family unity and enable him to contribute further to our community and our country.

Respectfully yours,

Michael Limb
Executive Chairman,
Asian American Council



11 Watermill Place | Palm Coast, FL 32164

May 23, 2006

Chief District Counsel
26 Federal Plaza 12 Floor
New York, NY 10278

Re: Letter of reference Mr. George Lihua Qiao.

Dear Mrs. Pauling,

My name is Michael L Dove; I'm the owner of Design Construction, LLC.
in Palm Coast, Florida. I have been building custom homes in this area for
over 30 years. Mr. Qiao has been selling custom homes for me in the Palm
Coast area for over 10 years and I have always been impressed by his
honesty and integrity. Mr. Qiao is a good business man and productive
member of society and he is a great asset to my company as Palm coast is
one of the fastest growing housing markets in the country.

If there is anything you can do to help Mr. Qiao it would be greatly
appreciated.

Thank you,

Michael L Dove

# Sand Hill Development Corp.

## Construction Managers / General Contractors

### 3872 Sunrise Highway  Seaford, New York  11783
### Phone 516-781-8604   Fax 516-783-7869

June 2, 2006

Mrs. Theresa Pauling
Chief District Counsel
26 Federal Plaza 12th Floor
New York, New York 10278

Dear Mrs. Pauling:

Please allow me a moment to define my business relationship with Mr. Lihua Qiao.

As a new home builder / developer in Nassau and Suffolk counties we have benefited from our association with Mr. Qiao in that he possesses an honor and high moral character worthy of praise. Mr. Qiao has performed as liaison between the new home construction industry and the Chinese speaking community as an integral element in helping to fulfill the American Dream of homeownership. Without his tireless dedication we believe that this vital demographic would have been sorely under serviced.

Further after meeting with Mrs. Sharon Qiao, Lihua's wife, and their four lovely children we believe his ties to the community to be unbreakable.

We expect that in years to come that we can rely on Mr. Qiao to continue his efforts in assisting his community while serving the bellwether of our robust local and national economy.

Please fell free to contact me at any time should I be of further assistance.

Sincerely,

Gordon S. Hecht
President
Sand Hill Development Corporation

GSH/ctd

**EDOLPHUS "ED" TOWNS**
MEMBER OF CONGRESS
10TH DISTRICT, NEW YORK

**ENERGY AND COMMERCE**
HEALTH
TELECOMMUNICATIONS AND
THE INTERNET
COMMERCE, TRADE, AND
CONSUMER PROTECTION

**GOVERNMENT REFORM**
GOVERNMENT EFFICIENCY AND
FINANCIAL MANAGEMENT
RANKING MEMBER

WASHINGTON OFFICE:
SUITE 2232
RAYBURN HOUSE OFFICE BUILDING
WASHINGTON, DC 20515
(202) 225-5936

BROOKLYN OFFICES:
26 COURT ST., SUITE 1510
BROOKLYN, NY 11242
(718) 855-8018

1110 PENNSYLVANIA AVENUE
STORE 5
BROOKLYN, NY 11207
(718) 272-1175

1670 FULTON STREET
BROOKLYN, NY 11213
(718) 774-5682

2294 NOSTRAND AVENUE
BROOKLYN, NY 11203
(718) 434-7931

# Congress of the United States
## House of Representatives
### Washington, DC 20515-3210

March 30, 2006

Chris Shanahan,
Field Office Director
Department of Homeland Security
26 Federal Plaza, 11th Fl
New York, NY 11278

Re: **Qiao, Li Hua**
**A: 719-89-922**

Dear Mr. Shanahan:

I write today in strong support of Mr. Li Hua Qiao who has had removal proceedings initiated against him for a 1998 conviction for mail fraud on the grounds that the crime involved moral turpitude. During a close and concerned review of the brief prepared by Mr. Vlad Kuzmin (Kuzmin & Associates, P.C.), I am more convinced that Mr. Qiao deserves an opportunity to remain in the US with his family. The fact that his wife and children are all US Citizens should afford him consideration to stay on humanitarian grounds.

Mr. Qiao has had many accomplishments since his unfortunate circumstances that not only confirm that he is man of divine moral character. He also has a deep sense of community which is exemplified by his membership in a multitude of community based organization that service not only the community, but also those that are in serious need of services in order to sustain a stable family environment.

Mr. Qiao removal would be a devastating blow to the family structure he has fundamentally built and cause extreme hardship to his close and loving family. America was built on the strength that the family what builds a great society. I am confident, therefore that he is more than an asset than a deficit to this great country of our and the multitude of cultures it supports.

Your assistance with this matter will be greatly appreciated. With warm wishes, I remain

Sincerely yours,

Edolphus "Ed" Towns
Member of Congress

COPY